IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DELBERT GLEN ROGERS,<br>Institutional ID No. 02634254, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-185-M-BQ |
| | § | |
| JOHN COCHRAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Delbert Glen Rogers filed this civil

rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while confined

at the Texas Civil Commitment Center (TCCC). Compl. 1–20, ECF No. 1; Questionnaire 1, ECF

No. 18.[1]  Rogers seeks declaratory and injunctive relief, as well as monetary damages.  Compl.

18–19.

Rogers filed his Complaint on August 6, 2020.  ECF No. 1.  Under Special Order No. 3-

251, this case was automatically referred to the undersigned United States Magistrate Judge for

further proceedings.  Subsequently, the undersigned granted Rogers's Application to Proceed *In

Forma Pauperis* (IFP).  ECF Nos. 4, 8.  The Court thereafter reviewed Rogers's Complaint, along

with authenticated records provided by the TCCC and Texas Civil Commitment Office (TCCO),

and ordered Rogers to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93

(5th Cir. 1976), which he completed and returned.  ECF Nos. 16, 18.  The Court then determined

---

[1] Page citations to Rogers's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

it required additional information to sufficiently screen the Complaint and ordered Rogers to complete a supplemental questionnaire, which he timely returned. ECF Nos. 20, 21.

After considering Rogers's allegations in his Complaint, responses to the Court's questionnaires, authenticated records provided by the TCCC and TCCO, and applicable law, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

## I.    Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[2]    28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)).    A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327.    When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may

---

[2] Rogers is housed at the TCCC under an order and judgment of civil confinement as a sexually violent predator (SVP).  Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act.  Because Rogers sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2).

dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002)).

## II.   Discussion

In general, Rogers's Complaint and questionnaire responses are vague, incoherent, and lack specific facts supporting cognizable claims. Despite their ambiguity, the Court addresses each claim in turn.

### A.   Background

Rogers asserts claims against the following Defendants: (1) Executive Facilities Administrator John Cochran; (2) Executive Director Marsha McLane;[3] (3) Assistant Facilities Administrator Wayne Schmoker; (4) Dr. Cynthia Jumper; (5) Nurse Practitioner (NP) Jonne Castro;[4] (6) Sergeant (unknown first name) Thomas; (7) Sergeant Aniasa Orneles; (8) Captain (unknown first name) Dembal; (9) Officer N. Garcia; (10) Assistant General Counsel of the Texas Tech University System Nathan Christopher; (11) Physical Therapist (PT) Chris Truno; and

---

[3] Rogers names Marsha McLane as a defendant in this action, yet he does not allege a single fact that connects her to the purported constitutional violations. *See generally* Compl. 1–22; Questionnaire 1–34; Questionnaire II 1–6, ECF No. 21. Because "[p]ersonal involvement is an essential element of a civil rights cause of action" (*Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)), the district judge should dismiss any claims against Defendant McLane.

[4] Rogers refers to Defendant Castro as a "P.A. Nurse"; however, authenticated records indicate that Defendant Castro is a Nurse Practitioner rather than a Physician's Assistant. *See* Compl. 4. The Court therefore refers to her accordingly.

(12) Texas Tech University Health Sciences Center (TTUHSC). Compl. 1–6; Questionnaire 1, 9, 12–13. Rogers sues all Defendants in their individual and official capacities. Compl. 1.

Rogers's claims are difficult to decipher. In response to the Court's questionnaire, however, Rogers clarifies that he believes one or more Defendants (1) were deliberately indifferent to his serious medical needs, (2) discriminated against him due to his age and race, (3) violated his privacy, (4) subjected him to unconstitutional conditions of confinement, (5) have retaliated or have threatened to retaliate against him, (6) conspired against him, and (7) committed fraud. Questionnaire 1, 7.

*1. Medical care*

Rogers primarily claims Defendants were deliberately indifferent to his serious medical needs on several occasions. As to these charges, he attributes the violations to Defendants Jumper, Castro, Cochran, Schmoker, Orneles, Thomas, Dembal, Truno, and TTUHSC. *Id.* at 4–5, 8–13, 15, 17–19, 21–23, 25–26, 29, 31.

According to Rogers, Defendant Jumper was deliberately indifferent to his medical needs on May 1, 2019, when she "refused to have her colleague to treat [him]" and "placed [him] in harm's way with a corrupt medical system due to [Defendant Castro]," who Rogers asserts "was as dum [sic] as a bag of rocks" and was deliberately indifferent to his medical needs such that she almost caused his death. *Id.* at 4–5. Moreover, he alleges Defendant Jumper "refused to order a legal licensed doctor to work at Texas Civil Commitment Center" and "she told [Defendant Castro] to lie to [his] face." *Id.* He further avers that Defendant Jumper employed Defendant Castro who "couldnt [sic] fully do her job" because it "was the first time out on her own." *Id.* at 4. He claims Defendant Jumper "should of have [sic] pulled [Defendant Castro] because she can not deal with stress" and "if not she still want's [sic] to abuse her power." *Id.* at 6. And as to Defendant Castro,

he alleges that she failed to provide treatment because "she kept runing [sic] to the phone." *Id.* at 4.

Next, he asserts that Defendant Jumper "order[ed] [the] prescription drug metformin that [his] body rejected [and he] almost died in [his] sleep," and when he "reported it to Texas Tech Medical[, Defendant] Castro had a [sic] attitude knowing the drug" may cause "cancer[,] over 66 side effects[, and] even death." *Id.* Rogers also contends that Defendant Castro increased his dosage without "even try[ing] to test [his] blood to see if [his] body could hold it," causing his "hart [sic] to [run] like a [sic] 18 wheeler truck fast." *Id.* at 11. And he alleges that when he told Defendant Castro he was having a heart attack during the May 1 appointment, she told him that his prescription, Metformin, did not cause heart attacks. *Id.* at 5. Rogers believes Defendant Castro "is very very dangerous to [his] health" and "stated to [his] face she didnt [sic] . . . [care] due to distribution of what a real medical nurse shouldnt [sic] be doing." *Id.* at 18. He similarly claims that she "wasnt [sic] always in the right frame of mind to presenting opportunity as a medical provider." *Id.* at 17.

Rogers also generally claims he was denied "treatments" between May 1 and August 30, 2019. *Id.* at 4–5. In response to the Court's supplemental questionnaire, Rogers explains that he "had a medical appointment that was order[ed] on [May 24, 2019], that order was denied and refused to see a medical specialist, from the out break [sic] of a drug called Cymbalta." Questionnaire II 1.

Next, Rogers alleges that Defendants Jumper and Schmoker ordered Defendant Castro to ignore his complaints and that since the Management Training Corporation (MTC) took over the operation of the TCCC, "all of M.T.C. has denied [him] of medical care all together." Questionnaire 8. Rogers claims that on February 21, 2020, Defendant Castro "told [him] to [his]

face that the order came from higher authority as the head boss of Texas Tech and M.T.C. in T.C.C.O. that it was out [of] her hands to try in do more she stated she couldnt as ordered [sic all]." *Id.* Moreover, Rogers alleges that Defendants Jumper and Schmoker did not care "if [he] live (or) die [sic all]." *Id.*

Rogers also claims that Defendants Cochran, Schmoker, Orneles, Thomas, and Dembal were deliberately indifferent by "over riding" the medical department and instructing Rogers to sleep on a top bunk on January 24, 2020. *Id.* at 11–12; ECF No. 6, at 1. According to Rogers, he had an expired bottom bunk pass at the time and Defendant Thomas told him "that pass dont [sic] mean shitt [sic]." Questionnaire 12, 19. He avers Defendants Orneles and Thomas "threaten[ed] to have [him] locked up"—and receive a bottom bunk in segregated housing—"even when they looked at [his] medical pass." *Id.* at 19. Rogers asserts that Defendants Orneles and Thomas "caus[ed] [him] more harm and pain after [he] told them [he] was sick." *Id.* at 22. He also worries that if he were to fall from "the top bunk in [his] sleep and hit corner of the table with the bad disc [he] already [has], [he] could get placed in a wheelchair for the rest of [his] life, at any time." *Id.* at 28.

Fourth, Rogers complains that TTUHSC discontinued his physical therapy treatment. *Id.* at 13. As to this claim, he names Defendants Jumper, Cochran, Schmoker, Dembal, Orneles, Thomas, Garcia, and Truno. *Id.* Rogers contends this constitutes "inadequate medical condition treatment" because "their job was to treat [him] with respect." *Id.* Further, he alleges that PT Truno "stated to [Rogers] that he dont [sic] really have to follow-up on any doctor order." *Id.*

In addition, Rogers asserts a deliberate indifference claim against Defendants Cochran, Schmoker, and Garcia, alleging they ignored his scheduled medical appointment on January 16, 2020. *Id.* at 23. He claims Defendants "dont [sic] have the full fix about [his] health." *Id.* More

specifically, Rogers alleges that an officer came to take him to medical and that when the officer arrived, Defendant Garcia "came flying at [him] telling [him] to get . . . out of medical didnt [sic] no one called for [him] get . . . out now." *Id.* Rogers acknowledges, however, that rather than being denied care altogether, Defendant Garcia instructed him to wait in the hallway until his appointment. Questionnaire II 2. In his view, Defendant Garcia harmed him because she "was very disrespectful." Questionnaire 23.

Next, Rogers blames each Defendant for the denial of his left knee surgery. *Id.* at 25. In response to the Court's inquiry as to why he believes each Defendant is responsible for the denial, Rogers responded, "Because they did it to me again and one of [L]ubbock Hospital open his mouth after they change the date." *Id.* According to Rogers, he requires surgery because "[his] left knee is rubbing bone to bone" and because he suffered a burn. *Id.* at 26. Although Rogers attached an exhibit to his Complaint showing that an orthopedic surgeon *did not* recommend surgery, Rogers nevertheless claims he "still need[s] surgery in [his] knee." *Id.*

Rogers also alleges Defendants denied him access to dental care beginning May 18, 2017, to present. *Id.* at 29. He avers that Defendants "had a job to perform and had a big failure to do it as medical perfessionals [sic]." *Id.* at 31. Moreover, Rogers contends that "[his] mouth of human life is the nasty, dirty, part of [his] human body" and "if [he] cant get [his] mouth clean after 3 year's hear it's damaging [his] mouth [sic all]" because he has not received any dental work during his confinement at the TCCC. *Id.* Further, he alleges that "medical dont [sic] have any dental equipment . . . nothing but a[n] x-ray," which is insufficient in his view. *Id.* at 30. He likewise complains that "they try to make [him] pay for dental in cleaning [his] teeth." *Id.* In response to the Court's inquiry into the dental care Rogers believes he requires, Rogers explains that his "teeth

need's [sic] <u>cleaning</u>" and again reiterates that "they try[] to make [him] pay or extorted 33%."
Questionnaire II 2–4.

Finally, Rogers asserts that TTUHSC had policies that resulted in his denial of medical
care. Questionnaire 9. He explains that TTUHSC "made up their own policies . . . by cover-up's
and delay's [sic all]," failed to support his medical needs, and "implemented frauds" by labelling
itself as a company of health and safety. *Id.* Rogers alleges that he is "hurting behide [sic] a half
done job of surgery after four months[,] physical therapy, evaluate and treat, continue plan of care,
tens unit placement, strengthening exercise, gait training . . . 4–6 week's L knee strain order [sic]"
and that he is a victim of Texas Tech's unjust practices and fraudulent business dealings. *Id.* at
10.

### 2. Discrimination

According to Rogers, Defendants Jumper, Garcia, Orneles, Thomas, Cochran, and
Schmoker have all discriminated against him or otherwise been offensive and derogatory toward
him. *Id.* at 5–6, 14–15, 20–21, 23–24.

First, concerning Defendant Jumper, Rogers contends that she committed a hate crime
against him. Compl. 2. In response to the Court's questionnaire, he explains that she took
"advantage of [him] as a patient and client, open door policy with the door open view of patient[,]
violation of [his] rights transportation to hospital refused to be seen under for medical care of
disabilities persists of [b]odly care after surgery." Questionnaire 5. Further, he again reiterates
that Defendant Jumper violated his rights when she "place[d] her trust" in Defendant Castro. *Id.*
at 6.

Next, as to Defendant Garcia, Rogers complains that she has an abusive and racist attitude.
Compl. 6. He alleges that she "is very manipulative, verbalized abuse threats using her culture as

8

a Spanish woman or Latino [sic]" and believes "her race is better than any African American." Questionnaire 14. When asked to explain how her actions violated his constitutional rights, Rogers responded that she treated him like he is "a prisoner and she has more authority than a security officer" and she lied on a "grievance stated [he] started everything." *Id.* Further, he alleges that on January 16, 2020, she told him "to get . . . out of medical." *Id.*

Rogers similarly claims that Defendants Orneles and Thomas are offensive and derogatory. Compl. 11. He avers that "they feel they got the upper hand even by disrespectful attitude's [sic]" and that "they are two unstable women intentional tryed [sic] to hurt [him]." Questionnaire 20. According to Rogers, Defendants Orneles and Thomas "mov[ed] [him] around when [he] was already sick but they didnt [sic] care." *Id.* at 21. He further avers Defendant Thomas told him he does not have any rights and Defendant Orneles "[tried] to change [his] medical." *Id.* at 20.

Finally, Rogers asserts that Defendants Cochran and Schmoker discriminated against him due to his age. *Id.* at 23. In support, he explains that they "let their officers do what they want lieve [sic] their post calls problem when not needed." *Id.* He also complains that Defendant Cochran does not have a license to run the TCCC. *Id.* at 24. Further, Rogers claims that Defendants Cochran and Schmoker "cut some kind of dealing with Texas Tech," changed his medical appointments "behide [sic] his back," and again references that his physical therapy was cut down "for only one hour on Saturday's [sic]." *Id.*

   *3. Privacy*

Rogers believes that unspecified individuals violated the Health Insurance Portability and Accountability Act (HIPAA). Compl. 6. He avers that on January 16, 2020, Defendant Garcia looked at him "with the door open half nude with the attitude violation of privacy in privilege safeguards and protected Health Information that is due to Plaintiff." *Id.* at 10 (cleaned up).

Moreover, Rogers claims that Defendant Garcia "started violating [his] privacy with provider" because she spoke with another officer.  Questionnaire 23.

### 4. Conditions of confinement

Rogers raises several conditions of confinement claims.  *See id.* at 26–30.  First, he complains that the physical therapy gym is "nasty" and that "there is 'no' good working equipment."  *Id.* at 26.  Rogers explains that some of the exercise equipment is broken and Defendant Truno "only ha[d] two big balls, a table two mats thats [sic] it."  *Id.* at 27.  He attributes the gym equipment claim to "all the officer that worked out and the gym that didnt help teach some of the resident's how to maintain equipment that was payed a resident money [sic all]."  *Id.* at 30.

Rogers also takes issue with the facility's "double-bunking."  *Id.* at 27.  He avers that the rooms are too small "to get by one person side way's [sic]."  *Id.*  Similarly, Rogers contends that the facility is overcrowded.  *Id.* at 28.  He estimates that there are between 382 and 387 residents and that number is in excess of the facility's capacity because Defendants are "packing in inmates from" the Texas Department of Criminal Justice (TDCJ) and are "using the old segregation room's for housing other than the other residents they have in segregation agg lock-up even to add, to COVID-19, patient's we're on lockdown [sic all]."  *Id.*  He also fears that residents will spread the COVID-19 virus to each other "like all of those nursing home's of deaths [sic all]."  *Id.*

Lastly, Rogers complains that TCCC residents are "paid too little of labor and deductions for cost of confinement are improperly deducted."  Compl. 16.  When asked to elaborate, however, Rogers concedes that these alleged violations do not apply to him because he does not work.  *See* Questionnaire II 5.

5. *Retaliation*

Rogers contends that Defendants Orneles and Thomas retaliated against him. Questionnaire 19–20, 22, 24–25. First, he claims they retaliated against him by threatening to put him in segregated housing on January 24, 2020, "after [he] kept asking for medical personal [sic] to see who order[ed] the move." *Id.* at 19, 24. He also claims that Defendant Orneles did retaliate against him; however, the only facts he pleads in support is that he "was at the communication mail-box [he] didnt [sic] know that she was going to turn coming at [him] she became [h]ostile" and he "asked her for security officer number she refused." *Id.* at 22.

Further, Rogers claims that Defendant Castro "intentionally plotted against [him] for revanage [sic] to get back at [him]" because she "order[ed] Metformin 500 MG willingly knowing that Metformin cause[s] cancer, side effects over 66 iteam [sic], or death." *Id.* at 11; Compl. 4. He does not, however, elaborate as to why he believes Defendant Castro sought revenge. *See* Questionnaire 11.

6. *Conspiracy*

Rogers alleges that Defendants Jumper, Orneles, and Thomas are guilty of conspiracy. *Id.* at 31. Specifically, he claims that "[a]ll three women was a disappointment shameful turn like leaning against the refrigerator reflected nice business women that had experience, incredible reaction they tried to be silence but ended up in corruption [sic all]." *Id.* He continues that Defendant Jumper "failed to lead properly" and treated Rogers like "a condemed [sic] building." *Id.* And as to Defendants Orneles and Thomas, he claims they "cant [sic] comprehend with an[] older man like [Rogers], so they dissided [sic] to get disgusting with [him]" and "wanted . . . to make [his] life uncomfortable." *Id.* at 32. In response to the Court's inquiry as to the basis for his belief that these Defendants entered into an agreement to conspire, Rogers claims "all three women

inter into a fram of mind of not feeling anykind of empathy [sic all]" and "seem's to be all three are on the same pathway aiding and abetting within due to the negligence of [his] health [and] safety denial of [his] medical condition [sic all]." *Id.* Moreover, he avers that Defendant Jumper "violated a contract policy agreement," Defendant Orneles "has been bulling [sic]" him since he arrived at the TCCC, and Defendant Thomas "is a woman betrailing [sic] to be a man" and has "hated [him] for some reason." *Id.* Ultimately, he asserts that "each one of the defendant's cant say that they didnt conspire against [him] in some way [sic all]. . . ." *Id.* at 33.

7. *Fraud*

Roger's final claim is that Defendants Jumper and Christopher committed fraud. *Id.* at 7–8, 16–17. In support of his allegation against Defendant Jumper, Rogers avers that she did so by misleading patients because the brochure "state's [sic] your safety is our priority." *Id.* at 7. He further claims she committed fraud because she failed "to protect [his] constitutional rights as a human being . . . ." *Id.* And concerning Defendant Christopher, Rogers contends that he is guilty of "misleading of general counsel of the Texas Tech University system" and "[a]ll the dirty dealing behide [sic] the medical department" because he "played a big role at the office table." *Id.* at 16. Finally, Rogers avers that Defendant Christopher "violated their contract of ability to perform falsify alter of document's [sic]" and "falsif[ied] . . . due process activity or profession of producing advertisements of services," thereby misleading Rogers. *Id.* at 16–17.

**B.    Rogers has not pleaded adequate facts demonstrating that Defendants were deliberately indifferent to his serious medical needs.**

As a civilly committed person, Rogers's right to reasonably adequate medical care derives from the Eighth Amendment. *See Rogers v. Caswell*, 823 F. App'x 263, 264–65 (5th Cir. 2020) (per curiam) (analyzing whether civilly committed plaintiff pleaded facts supporting claim for deliberate indifference to serious medical needs); *Bohannan v. Doe*, 527 F. App'x 283, 292 (5th

Cir. 2013) (applying Eighth Amendment standard to SVP's claim for deliberate indifference to serious medical needs); *see also Clark v. Rivas*, CIVIL ACTION NO. 5:17-CV-228-M-BQ, 2018 WL 3950429, at *5 (N.D. Tex. July 17, 2018) (same), *R. & R. adopted by* 2018 WL 3946456 (N.D. Tex. Aug. 16, 2018).

Under the Eighth Amendment, institutional officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). To state a constitutional violation, a plaintiff must show that the official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id.*; *see also Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell,* 463 F.3d 339, 345–46 (5th Cir. 2006). Even where a plaintiff establishes the objective element, an Eighth Amendment violation occurs only the official (1) knew of the substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to alleviate it. *Id.*; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal*

*Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show the official was actually aware of risk and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a provider's decision not "to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert*, 463 F.3d at 350 n.32. In sum, a plaintiff must demonstrate that staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Although Rogers's allegations are unclear, he seems to bring nine medical claims concerning: (1) an appointment on May 1, 2019; (2) his Metformin prescription; (3) the alleged denial of "treatments" between May 1 and August 30, 2019; (4) his "ignored" medical complaints;

(5) his top bunk placement; (6) the discontinuation of physical therapy; (7) an appointment on January 16, 2020; (8) the denial of knee surgery; and (9) dental care. *See* Questionnaire 4–5, 8, 11, 13, 19, 22–23, 25–26, 31. He also raises a policy claim against TTUHSC related to the purported denial of medical care. *Id.* at 9.

Claims one and seven both concern medical appointments. Specifically, Rogers alleges that on May 1, 2019, Defendants Jumper and Castro were deliberately indifferent to his medical needs. *See id.* at 4–5. For Defendant Jumper's part, he claims she hired an NP rather than "a legal licensed doctor to work at Texas Civil Commitment Center . . . ." *Id.* And as to Defendant Castro, Rogers alleges that she "couldnt [sic] fully do her job" because it "was the first time out on her own" and "she kept runing [sic] to the phone." *Id.* at 4. As to claim seven, Rogers alleges that on January 16, 2020, when he arrived at medical, Defendant Garcia "came flying at [him] telling [him] to get . . . out of medical didnt [sic] no one called for [him] get . . . out now." *Id.* at 23. In his view, Defendant Garcia harmed him because she "was very disrespectful." *Id.* Rogers acknowledges, however, that rather than being denied care altogether, Defendant Garcia instructed him to wait in the hallway until his appointment. Questionnaire II 2.

In either the May 1 or the January 16 incident (claims one and seven), Rogers fails to plead facts demonstrating deliberate indifference.[5] *See Rogers,* 709 F.3d at 410. Indeed, Rogers instead takes issue with the manner in which Defendants performed their duties, including that Defendant Jumper employs an NP when Rogers would prefer a medical doctor, Defendant Castro answered

---

[5] In response to the Court's supplemental questionnaire, Rogers, while discussing the January 16 claim, also alleges that "for the record it was already time for [his] appointment as [Defendant Garcia] was harmfully continue to sexually harassment [him] after the officer told her she sent [him] in [sic]." Questionnaire II 2. Assuming Rogers intends to amend his Complaint to include a sexual harassment claim against Defendant Garcia, "[v]erbal sexual harassment does not violate a detainee or inmate's constitutional rights." *Jane Doe 5 v. City of Haltom City,* 106 F. App'x 906, 908 (5th Cir. 2004). This claim should also be dismissed.

or used the phone during his visit, and Defendant Garcia was "disrespectful." *See* Questionnaire 4–5, 23. These allegations do not support a claim for deliberate indifference.[6] *See Rogers v. Markgraf*, 2:14-CV-0216, 2017 WL 1102881, at *4 (N.D. Tex. Mar. 3, 2017) (dismissing claim that defendant "was distracted during [plaintiff's] treatment and failed to pay attention to him" because the facts did not "reflect a *deliberate* indifference"), *R. & R. adopted by* 2017 WL 1102879 (N.D. Tex. Mar. 23, 2017), *aff'd sub nom. Rogers v. Massey*, 730 F. App'x 249 (5th Cir. 2018); *Sias v. Jacobs*, CIVIL ACTION NO. 6:17cv413, 2017 WL 8229544, at *8 (E.D. Tex. Dec. 11, 2017) (concluding allegation that defendant's "bed-side manner" was "disrespectful" failed to state a claim), *R. & R. adopted by* 2018 WL 1335424 (E.D. Tex. Mar. 14, 2018); *Buentello v. State Classification Comm. Members*, Civil Action No. H–12–2537, 2014 WL 287899, at *3 (S.D. Tex. Jan. 24, 2014) (noting that failure to follow "inmate's preferences is not a constitutional violation").

Next, claims two, six, and eight all concern medical judgments. Rogers takes issue with Defendant Castro's decision to prescribe Metformin, an unspecified TTUHSC personnel's decision to discontinue physical therapy, and an unnamed orthopedic surgeon's decision to not recommend surgery. *See* Questionnaire 4, 13, 25–26. These determinations are "classic example[s] of a matter for medical judgment" and therefore cannot form the basis of a deliberate indifference claim.[7] *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015) (quoting *Estelle*, 429

---

[6] To the extent Rogers intends to raise a claim related to his contention that Defendant Jumper instructed Defendant Castro "to lie to [his] face" because, after the two spoke on the phone, Defendant Castro told Rogers that his Metformin prescription could not cause a heart attack (*see* Questionnaire 5), this conclusory allegation likewise fails to raise a constitutional violation. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("[Courts] do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."). Moreover, as discussed *infra*, matters of medical judgment, e.g., whether a drug can cause a side effect such as a heart attack, cannot form the basis for a deliberate indifference finding.

[7] Rogers also claims Defendant Castro tried to "eliminate" him because she "order[ed] Metformin 500 MG willingly knowing that Metformin cause[s] cancer, side effects over 66 iteam [sic], or death." Compl. 4; Questionnaire 11. To the extent Rogers intends to bring a separate claim based on this allegation, his conclusory and unsupported accusation

U.S. at 107); *see Johnson v. Gregg Cnty. Jail*, CIVIL ACTION NO. 6:20-CV-00377-JCB, 2021 WL 789886, at *2 (E.D. Tex. Jan. 8, 2021) (concluding plaintiff failed to state a claim when he challenged follow up care provided and alleged doctor was deliberately indifferent "by failing to send him to physical therapy"), *R. & R. adopted by* 2021 WL 785089 (E.D. Tex. Mar. 1, 2021); *Smith v. Larpenter*, CIVIL ACTION NUMBER: 16-15778, 2017 WL 2773662, at *7 (E.D. La. May 3, 2017) (citing *Brauner*, 793 F.3d at 498–99) ("[T]he decision of which specific medication to prescribe Plaintiff is a classic example of a matter of medical judgment which is not actionable under § 1983."), *R. & R. adopted by* 2017 WL 2780748 (E.D. La. June 26, 2017); *Auguillard v. Toce*, CIVIL ACTION NO. 14–394–JJB–RLB, 2015 WL 5093842, at *5 (M.D. La. Aug. 27, 2015) (citing cases for support) (reasoning that "a decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference"); *Gonzalez-Lamas v. McAdams*, Civil Action No. 5:14–CV–124–C, 2015 WL 3883514, at *4 (N.D. Tex. June 22, 2015) ("[Defendants] determined that surgery was not required . . . a classic example of a matter of medical judgment." (internal quotation marks omitted)); *Dickerson v. Murray*, CIVIL ACTION NO. 3:11-CV-200, 2014 WL 12526722, at *2 (S.D. Tex. Jan. 15, 2014) ("As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right, even though the prisoner may disagree with the course of treatment.").

Even if the identified parties erred in making those decisions, such errors, at most, constitute claims for negligence or medical malpractice—not deliberate indifference. *See Estelle*,

cannot support a § 1983 claim. *See Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988) (requiring specific facts and noting that conclusory allegations are insufficient to maintain a claim under § 1983); *McCoy v. Berrera*, Civil Action No. 7:18-CV-00061-M-BP, 2020 WL 2025641, at *5 (N.D. Tex. Mar. 31, 2020) (granting 12(b)(6) motion where claim was "simply too conclusory and unsupported by factual allegations to support a plausible claim for relief"), *R. & R. adopted by* 2020 WL 1986460 (N.D. Tex. Apr. 27, 2020).

429 U.S. at 107. Allegations of "unsuccessful medical treatment, negligence, or medical malpractice are insufficient to give rise to a claim of deliberate indifference." *Fife v. NFN Hensley, Health & Med. Adm'r*, No. 08-10062, 2009 WL 348823, at *1 (5th Cir. Feb. 12, 2009) (per curiam) (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)); *see Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Mere negligence or even gross negligence does not constitute deliberate indifference."); *Wojtowicz v. Lubbock Cnty. Det. Ctr.*, CIVIL ACTION NO. 5:19-CV-166-BQ, 2020 WL 2529373, at *3 (N.D. Tex. Mar. 19, 2020) ("[Plaintiff's] assertions that Doe Defendants should have surgically repaired his [injury] amount to a mere claim for disagreement with treatment, negligence, or malpractice—none of which support a constitutional violation."), *R. & R. adopted by* 2020 WL 2528537 (N.D. Tex. May 18, 2020). Accordingly, Rogers has failed to state a deliberate indifference claim on this basis as well.

As to claims three and four—that Defendants purportedly denied "treatments" between May 1 and August 30, 2019, and generally ignored Rogers's complaints—Rogers again has not pleaded facts sufficient to establish deliberate indifference. *See* Questionnaire 4–5, 8. With respect to claim three, Rogers explains that he "had a medical appointment that was order[ed] on [May 24, 2019], that order was denied and refused to see a medical specialist, from the out break of a drug called Cymbalta." Questionnaire II 1. Stated alternatively, the Court construes Rogers's claim as alleging he should have been evaluated by a specialist due to an apparent reaction to the medication. Initially, the Court notes that Rogers's vague claim is so devoid of specifics that the Court cannot determine that any named Defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and actually "[drew] the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Guillory v. La. Dep't of Health & Hosps.*, CIVIL ACTION NO. 16-787-JWD-RLB, 2018 WL 1404277, at *13 (M.D.

La. Mar. 20, 2018) ("[The plaintiff] alleges no facts to indicate that [the defendant] actually drew an inference that [the plaintiff] faced a substantial risk of serious harm . . . ."); *Armstrong v. Hodges*, Civil Action No. H–11–1611, 2011 WL 5156796, at *2 (S.D. Tex. Oct. 27, 2011) (dismissing medical claim where plaintiff failed to plead facts which would "permit a finding that [defendant]" could infer a substantial risk of harm and "actually drew an inference"); *Johnson v. Lew Sterrett Criminal Just. Ctr.*, No. 3:02–CV–647M, 2003 WL 23473095, at *3 (N.D. Tex. Feb. 28, 2003) (dismissing during screening § 1983 claim where plaintiff did not allege that "(1) [defendant] was aware of facts from which an inference of an excessive risk to his health or safety could be drawn and (2) that she actually drew an inference that such potential for harm existed").

Moreover, Rogers's claim amounts to dissatisfaction with the type of provider that evaluated his medical needs. Disagreement with the form of medical treatment provided, however, does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Alfred v. Tex. Dep't of Criminal Just.*, 80 F. App'x 926, 927–28 (5th Cir. 2003) (stating that refusal to allow inmate to see a specialist did not amount to deliberate indifference to serious medical needs). In addition, Rogers has no constitutional right to receive treatment from a specialist. *See Alfred*, 80 F. App'x at 928; *Robinson v. Lehman*, No. 4:08CV91-P-A, 2008 WL 3976920, at *1 (N.D. Miss. Aug. 20, 2008) (noting "a prisoner does not have the right to be seen by a specialist, even if a prison doctor recommends that course of action," and dismissing plaintiff's deliberate indifference claims where he never obtained a specialist referral and simply disagreed with the treatment provided). The decision of whether to provide additional, or specialized, medical treatment is an example of pure medical judgment; the exercise of such judgment does not constitute deliberate indifference. *Domino*, 239 F.3d at 756. At best, a very liberal construction of Rogers's allegations might state

a claim for negligence, which also fails to rise to the level of a constitutional violation. *See Gobert*, 463 F.3d at 346.

Concerning claim four, Rogers avers that Defendant Jumper ordered Defendant Castro to "ignor[e] all of [his] medical conditions" and that since the MTC took over the operation of the TCCC, "all of M.T.C. has denied [him] of medical care all together [sic]." Questionnaire 8. He explains that during an appointment on February 21, 2020, Defendant Castro "told [him] to [his] face that the order came from higher authority as the head boss of Texas Tech and M.T.C. in T.C.C.O. that it was out her hands to try in do more she stated she couldnt as ordered [sic all]." *Id.* In support of this contention, Rogers avers that "Texas Tech University Health Sciences Center was having big problems." *Id.* Rogers's own pleadings, however, clearly refute his allegation. The MTC began operating the TCCC May 1, 2019,[8] and Rogers acknowledges that he has since visited with medical personnel many times—some of which give rise to Rogers's other claims herein. *See id.* at 4–5, 7, 10–11, 17–18, 25–26. Thus, Rogers's allegation is best understood as dissatisfaction with the care he has been provided since MTC took over the operation of the TCCC—a belief that does not equate to deliberate indifference. *See McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Johnson v. United States*, CIVIL ACTION: 3:18cv176-TSL-RHW, 2020 WL 4496752, at *4 (S.D. Miss. June 29, 2020) ("A prisoner's dissatisfaction or disagreement with medical treatment does not establish a constitutional violation."), *R. & R. adopted by* 2020 WL 4493137 (S.D. Miss. Aug. 4, 2020); *Shipley v. Statton*, Civil Action No. 1:08–CV–133–C ECF, 2009 WL 1469716, at *4 (N.D. Tex.

---

[8] *Management & Training Corporation Awarded Contract to Operate the Texas Civil Commitment Center*, MTC NEWSROOM (Apr. 30, 2019), https://www.mtctrains.com/wp-content/uploads/2019/04/MTC_AWARDED_TEXAS _CIVIL_ COMMITMENT_CENTER.pdf (last visited Mar. 26, 2021).

May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] does not demonstrate that he was denied treatment.").

Rogers's fifth deliberate indifference claim centers upon his allegation that Defendants Cochran, Schmoker, Orneles, Thomas, and Dembal told Rogers to sleep on a top bunk on January 24, 2020. Questionnaire 11–12; ECF No. 6, at 1. Rogers concedes, however, that he did not have an active bottom bunk pass in January 2020 and that Defendants advised him to contact the medical department to request a new pass. *See* Questionnaire 12–13. Ultimately, Rogers did so and received a new bottom bunk pass; Rogers does not claim that Defendants assigned him to a top bunk thereafter. *See id.* Further, Rogers does not claim that he was actually required to sleep on a top bunk—to the contrary, he acknowledges that Defendants informed him that he could be placed on a bottom bunk in segregated housing. *Id.* at 12. Accordingly, Rogers does not plead facts demonstrating deliberate indifference to a serious medical need. *See Orellano v. Pittman*, CIVIL ACTION NO. H-15-0259, 2016 WL 1446231, at *5 (S.D. Tex. Apr. 11, 2016) (dismissing deliberate indifference claim based on officer's confiscation of knee brace because prisoner had an expired medical pass and concluding that plaintiff could at most show negligence); *Lopez v. Hanson*, Civil Action No. 9:10cv124, 2011 WL 2472603, at *10 (E.D. Tex. June 20, 2011) ("Even if [defendant] took away the [hernia] belt at one point, possibly because his pass to have the belt had expired, [plaintiff] has failed to show that this action amounted to deliberate indifference to his serious medical needs.").

Rogers's final deliberate indifference claim relates to the alleged denial of dental care during his civil commitment based on the fact that "they try to make [him] pay for dental in cleaning [his] teeth." Questionnaire 29–30; Questionnaire II 2–4. The Fifth Circuit has upheld as constitutional the assessment of fees for medical services. *See Morris v. Livingston*, 739 F.3d 740,

748 (5th Cir. 2014) (rejecting plaintiff's argument that a TDCJ policy requiring inmates to pay an annual medical care fee violated plaintiff's constitutional rights because plaintiff failed to show he was personally denied medical treatment due to his inability to pay the fee); *Ward v. Gloor*, Civil Action No. V–14–0036, 2014 WL 2949454, at *2 (S.D. Tex. June 30, 2014) (citing *Morris*, 739 F.3d at 746–47) (explaining that "inmates do not have a constitutional right to healthcare without incurring any financial indebtedness, even if they are indigent, and they may be obligated to make partial or deferred payments as money becomes available to them in the future"). This is because institutions "have a legitimate interest in defraying the costs incurred in housing and caring for" civilly committed persons. *See Ward*, 2014 WL 2949454, at *2 (citing *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253–54 (4th Cir. 2005)). Requiring Rogers to pay a portion, or all, of the expense of his dental care is an obligation that he "would be required to meet in the outside world." *Reynolds v. Wagner*, 128 F.3d 166, 174, 178 (3d Cir. 1997) (citing several cases for support) (holding inmates did not establish valid Eighth or Fourteenth Amendment claims where medical fee was "modest" in nature and inmates did not demonstrate they needed "the funds in their prison accounts for essential expenses"); *see also Morris*, 739 F.3d at 746–47 (upholding a TDCJ regulation requiring inmates to pay a $100 annual medical care fee).

More significantly, Rogers's desire for routine dental cleanings, without more, does not constitute a serious medical need. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) ("The mere failure to provide a routine tooth cleaning doesn't create a serious medical need."); *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (citation omitted) ("Plaintiffs cannot establish that the lack of routine teeth cleaning constitutes 'deliberate indifference to serious medical needs.'"); *Taylor v. Christain*, No. 94–1050, 1994 WL 684028, at *1 (7th Cir. Dec. 7, 1994) ("Absent an allegation of an ongoing serious dental problem, [appellant's] allegation, only a denial

22

of routine dental care, does not constitute a constitutional violation."); *Daughtery v. Epps*, Civil Action No. 1:13–cv–557–KS–MTP, 2015 WL 4899660, at *2 (S.D. Miss. July 30, 2015) ("There is no evidence that Plaintiff's need for a teeth cleaning constituted an immediate, serious medical need that leads to excessive risk of inmate health or safety."), *R. & R. adopted by* 2015 WL 4899707 (S.D. Miss. Aug. 17, 2015); *Wallace v. Jones*, No. 12–cv–1997, 2013 WL 1567449, at *2 (W.D. La. Feb. 5, 2013) ("Teeth cleaning is a preventative measure, not a serious medical need."), *R. & R. adopted by* 2013 WL 1567378 (W.D. La. Apr. 12, 2013). Therefore, the fact that TCCC allegedly requires fees for dental cleanings, standing alone, does not amount to a constitutional violation.

And to the extent Rogers raises a policy claim related to Defendants' alleged denial of care, Rogers cannot, without an underlying constitutional violation, establish that any alleged policy was the "moving force" behind his constitutional harm. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see Hitt v. McLane*, A–17–CV–289–SS, 2018 WL 773992, at *9 (W.D. Tex. Feb. 7, 2018) (dismissing SVP's policy claim in part because SVP failed to allege an underlying constitutional violation), *R. & R. adopted by* 2018 WL 1326507 (W.D. Tex. Mar. 15, 2018).

In sum, the undersigned recommends that the United States District Judge dismiss Rogers's medical claims in their entirety.[9]

---

[9] In response to the Court's supplemental questionnaire, Rogers alleges that he has been "denied [a] follow-up" to a colonoscopy performed on August 12, 2020. Questionnaire II 2. Rogers provides no accompanying facts regarding this claim, including why he believes the follow-up to be necessary, the alleged resulting harm, or the parties he holds responsible. *See id.* Accordingly, without more, this purported denial does not give rise to a viable constitutional claim. *See Sampia v. Neustrom*, Civil Action No. 6:09–1988, 2010 WL 6600163, at *5 (W.D. La. Oct. 20, 2010) (dismissing claim alleging deliberate indifference to serious medical need where inmate was not taken to the hospital for a follow-up visit post colonoscopy and he alleged no facts demonstrating substantial harm as a result), *R. & R. adopted by* 2011 WL 1767573 (W.D. La. May 9, 2011).

**C.      To the extent Rogers brings equal protection claims, they should be dismissed.**

In Rogers's view, Defendants Jumper, Garcia, Orneles, Thomas, Cochran, and Schmoker have discriminated against him or have otherwise been offensive and derogatory due to his race and/or age. *See* Questionnaire 5–6, 14–15, 20–21, 23–24. Rogers alleges that Defendant Jumper committed a hate crime against him because of an "open door policy with the door open" and because she purportedly refused to transport him to the hospital and "place[d] her trust" in Defendant Castro; Defendant Garcia "is very manipulative," believes "her race is better than any African American," and "treated [him] like a prisoner"; and Defendants Orneles and Thomas have "disrespectful attitude's [sic]" and Defendant Thomas told him "[he] [does not] have any . . . rights." *Id.* at 5–6, 14, 20. Concerning age discrimination, Rogers claims that Defendants Cochran and Schmoker "let their officers do what they want" and complains that Defendant Cochran does not "have a license to run [the TCCC]." *Id.* at 23–24. In sum, Rogers generally complains that Defendants do not properly do their jobs or treat him with respect. *See id.* Liberally construed, the Court understands Rogers as raising equal protection claims.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish a violation of his right to equal protection, Rogers "must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted); *see also Taylor v. Johnson*,

257 F.3d 470, 473 (5th Cir. 2001). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992).

Here, Rogers generally believes Defendants have discriminated against him or otherwise shown bias; however, he does not plead any facts to support equal protection violations. *See* Questionnaire 5–6, 14–15, 20–21, 23–24. First, although Rogers contends Defendants discriminated against him due to both his race and age, "age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). Accordingly, any purported age based equal protection claims against Defendants Cochran and Schmoker should not proceed.

And while "[i]nmates have [a] constitutional right to be free from racial discrimination" (*Bentley v. Beck*, 625 F.2d 70, 70–71 (5th Cir. Unit B 1980)), Rogers's claims against Defendants Jumper, Garcia, Orneles, and Thomas similarly fail. Even assuming one or more Defendants were offensive or derogatory toward Rogers, he fails to plead facts indicating that any Defendant actually discriminated against him in violation of the Constitution. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) ("Assuming arguendo that [defendant] used racial epithets, [plaintiff] must also demonstrate . . . [defendants] participated in actions that deprived [plaintiff] of his constitutional rights."); *Portillo v. Brown*, No. 2:07–CV–0031, 2009 WL 1160345, at *3 (N.D. Tex. Apr. 28, 2009) (assuming the plaintiff alleged "facts showing defendant . . . may have disliked him because of his race, he [did] not allege[] facts showing defendant actually committed a discriminatory act"). Neither has Rogers alleged facts suggesting a racial motivation, i,e., that any discrimination occurred *because of his race*. *See Cruz-Hernandez v. Johnson Cnty. Det. Ctr.*,

Civil Action No. 3:16-CV-220-M-BH, 2017 WL 927825, at *7 (N.D. Tex. Jan. 6, 2017) ("The mere suspicion or belief that one has suffered race-based discrimination is insufficient to maintain [a cause of] action."); *Heijnen v. Villareal*, Civil Action No. 6:12–CV–00036–BL ECF, 2013 WL 950791, at *3 (N.D. Tex. Mar. 11, 2013) ("[Plaintiff] has not established racially discriminatory intent or purpose; he has merely asserted allegations based on his perception, which are insufficient to support an equal protection claim.").

Moreover, Rogers does not allege that he was intentionally treated differently from other similarly situated persons at the TCCC. *See Gibson*, 700 F.3d at 238. Absent such an allegation, Rogers's equal protection claims fail. *See Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (affirming dismissal at screening of equal protection claim because pretrial detainee did not allege that any defendant had a discriminatory intent); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (affirming dismissal because prisoner's equal protection claim failed to "implicate the Equal Protection Clause" where he did not allege he was treated differently than similarly situated prisoners); *Baker v. TDCJ-CID*, CIVIL ACTION NO. 5:15-CV-202-BQ, 2017 WL 11467827, at *9 (N.D. Tex. Mar. 9, 2017) (recommending dismissal at screening of equal protection claim because plaintiff did not establish that he was treated differently from similarly situated prisoners), *R. & R. adopted as modified by* 2017 WL 11467813 (N.D. Tex. Apr. 25, 2017); *Longmire v. Starr*, No. 3:05-CV-0315-M, 2005 WL 2990908, at *2–4 (N.D. Tex. Aug. 29, 2005) (dismissing as frivolous equal protection claim where plaintiff's allegations did not establish the necessary discriminatory purpose).

**D.    Rogers cannot state a cognizable constitutional claim based on alleged HIPAA violations.**

Rogers charges unspecified individuals with violations of his rights under HIPAA. Compl. 6 (claiming he did not authorize "Security staff to be present in the 'examination room' of any

'Doctor,' Hospital, etc. During an examination by doctor, nurse, surgeon, etc. And a resident of (T. C. C. O.) violation of 'Hippa Federal Law' [sic all]").  Liberally construing his pleadings, the Court understands Rogers as claiming a violation of his privacy rights under HIPAA during a January 16, 2020, doctor's appointment when Defendant Garcia allegedly "look[ed] at plaintiff, with the door open half nude with the attitude violation of privacy in privilege safeguards and protected health information that is due to Plaintiff."  *Id.* at 10 (cleaned up).  Rogers further explains that Defendant Garcia "started violating [his] privacy with provider" because she spoke with another officer.  Questionnaire 23.

The Fifth Circuit has held, however, that "there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over [a private individual's] asserted claims." *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam); *see also Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (per curiam) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action.").  Because Rogers cannot state a viable § 1983 claim based on the alleged HIPAA violations, the District Court should dismiss his claim.  *See, e.g.*, *Clinton v. Nurse Elizabeth*, No. 3:17-cv-2109-D-BN (N.D. Tex. Aug. 11, 2017) (recommending dismissal of detainee's HIPAA claim); *Evans v. Brisolara*, Civil Action No. 1:09CV485–RHW, 2010 WL 1257862, at *2 (S.D. Miss. Mar. 26, 2010) (dismissing prisoner's HIPAA claims "because HIPAA regulations do not create a private cause of action").

## E.    The district judge should dismiss Rogers's conditions of confinement claims.

As a civilly committed person, Rogers is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982).  Officials "enjoy wide latitude,"

however, "in developing treatment regimens [for SVPs]." *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997). Where an official's decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," the official may be liable for a constitutional deprivation. *Youngberg*, 457 U.S. at 323.[10]

Rogers raises three conditions of confinement claims. *See* Questionnaire 26–30. Specifically, he takes issue with the physical therapy gym, the size of the rooms and the capacity of the facility, and claims TCCC residents are "paid too little of labor and deductions for cost of confinement are improperly deducted." *Id.*; Compl. 16.

His first complaint is that the physical therapy gym is "nasty" and that "there is 'no' good working equipment." Questionnaire 26. He explains that some of the exercise equipment is broken and Defendant Truno "only had two big balls, a table two mats thats [sic] it." *Id.* at 27. Significantly, Rogers does not contend that Defendants deprived him of exercise—he instead complains about the quality of exercise equipment available to him during physical therapy. *See id.* at 26–27. Although the Supreme Court has referred to exercise as an "identifiable human need" (*Wilson v. Seiter*, 501 U.S. 294, 304 (1991)), Rogers does not have a constitutional right to exercise

---

[10] The Fifth Circuit has not considered which legal standard applies to an SVP's challenge to the conditions of his confinement, i.e., the Eighth Amendment or the *Youngberg* standard. Other courts, however, have applied the *Youngberg* standard. *See, e.g., West v. Schwebke*, 333 F.3d 745, 747–48 (7th Cir. 2003) (applying the *Youngberg* standard to civil detainee's claim that defendants held him in "therapeutic seclusion" in violation of his constitutional rights); *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300, at *13 (N.D. Ill. Jan. 14, 2005) (reviewing involuntarily committed person's § 1983 conditions of confinement claim under *Youngberg*); *see also Turay v. Seiling*, 108 F. Supp. 2d 1148, 1151 (W.D. Wa. 2000) (applying the *Youngberg* standard to SVP's claim that defendants did not provide adequate mental health treatment). Moreover, in *Perniciaro v. Lea*, an involuntarily detained (but not yet committed) plaintiff alleged that, among other claims, defendants "failed to maintain reasonably safe conditions of confinement." 901 F.3d 241, 250 (5th Cir. 2018). The plaintiff argued that *Youngberg*'s professional judgment standard applied, while defendants argued for application of the Eighth Amendment's deliberate indifference standard, which generally applies to pre-trial detainees. The Fifth Circuit held, without deciding the applicable standard, that even assuming the *Youngberg* standard applied, plaintiff had failed to establish defendants' conduct was unreasonable. *Id.* at 255–56. In so deciding, the Fifth Circuit noted that the *Youngberg* standard is "a less deferential, higher standard for state officials than is deliberate indifference." *Id.* at 256 n.14. Accordingly, if Rogers cannot satisfy *Youngberg*'s lower bar, he likewise could not establish deliberate indifference.

equipment of a certain standard. *See Patin v. LeBlanc*, Civil Action No. 11–3071, 2012 WL 3109402, at *30 (E.D. La. May 18, 2012) ("This Court can find no constitutional requirement that [plaintiff] be provided with the exercise equipment of his choosing, or of superior quality."), *R. & R. adopted by* 2012 WL 3109398 (E.D. La. July 31, 2012). Neither is the Constitution implicated by Rogers's allegation that the gym is "nasty" because he has not asserted any facts suggesting that the conditions constituted a "substantial departure from accepted professional judgment." *See Youngberg*, 457 U.S. at 323; *see also Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Williams v. Hunt Cnty., Tex. Sheriff Dep't*, No. 3:17-cv-3264-D-BN, 2019 WL 6879308, at *4 (N.D. Tex. Oct. 4, 2019) ("Alleging that a cell that was generally 'out of service' or that a toilet or shower was broken and thus the cell could be considered unsanitary – without alleging more – is not enough to allege a constitutional violation."), *R. & R. adopted by* 2019 WL 6878231 (N.D. Tex. Dec. 17, 2019).

Rogers also takes issue with the facility's "double-bunking" practice. Questionnaire 27. He avers that the rooms are too small "to get by one person side way's [sic]" and the facility is overcrowded. *Id.* at 27–28. He estimates that there are between 382 and 387 residents and, in his view, that number is in excess of the facility's capacity. *Id.* He does not identify any particular harm beyond his fear that residents will spread the COVID-19 virus to each other "like all of those nursing home's of deaths [sic all]." *Id.* Even assuming Rogers is correct that the TCCC is currently beyond its capacity, overcrowding "is not itself a violation of the Constitution." *Williams v. Edenfield*, Civil Action No. 1:12–CV–076–BI ECF, 2012 WL 6645611, at *4 (N.D. Tex. Dec. 21, 2012) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981)); *accord Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) ("Overcrowding of persons in custody is not *per se*

unconstitutional."); *Starks v. Bowles*, 682 F. Supp. 891, 893 (N.D. Tex.) (concluding that plaintiffs "failed to establish a viable federal claim" in connection with the argument that they had been "subjected to overcrowded living conditions"), *aff'd*, 851 F.2d 1419 (5th Cir. 1988). The same holds true for "double-bunking." *See Bell*, 441 U.S. at 541 (holding that "double-bunking" did not violate pretrial detainee's constitutional rights); *Cote v. Murphy*, 152 F. App'x 6, 7 (1st Cir. 2005) (affirming dismissal of claim brought by civilly committed "sexually dangerous persons" and concluding that "double-bunking" did not violate the Constitution); *Duncan v. Puckett*, No. 96-60096, 1996 WL 400039, at *1 (5th Cir. May 27, 1996) (per curiam) (concluding plaintiff "failed to allege a legally arguable constitutional claim" where he complained that defendants "plac[ed] him in a single cell with another inmate"). Accordingly, where Rogers does not plead facts beyond the general proposition that the facility is overcrowded, the undersigned recommends that the district judge dismiss the claim.

Next, Rogers asserts that TCCC residents are "paid too little of labor and deductions for cost of confinement are improperly deducted." Compl. 16. When asked to elaborate on this claim, however, Rogers concedes that these alleged violations do not apply to him because he does not work. *See* Questionnaire II 5. Accordingly, the undersigned recommends that the district judge dismiss this claim. *See Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) ("[Inmate] would lack standing to seek § 1983 damages for violations of other prisoners' rights."); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) ("[Plaintiffs], like all persons who claim a deprivation of constitutional rights, were required to prove some violation of their personal rights."); *Davis v. Ouachita Corr. Ctr.*, CIVIL ACTION NO. 19-0841, 2019 WL 5076394, at *7 (W.D. La. Sept. 26, 2019) ("Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others."), *R. & R. adopted*

30

*by* 2019 WL 5073686 (W.D. La. Oct. 9, 2019); *Kennedy v. Dall. Police Dep't*, Civil Action No. 3:06-CV-0716-G, 2007 WL 30260, at \*2 (N.D. Tex. Jan. 4, 2007) ("[Inmate] lacks standing to assert any claims on behalf of other inmates or employees at the . . . Jail.").

**F.    Rogers has not alleged facts demonstrating Defendants retaliated against him in violation of his constitutional rights.**

According to Rogers, Defendant Castro "intentionally plotted against [him] for revange [sic]," Defendants Orneles and Thomas retaliated against him by threatening to put him in segregated housing, and Defendant Orneles refused to tell him her security officer number. Questionnaire 11, 19, 22, 24.

To successfully assert a retaliation claim, civilly committed persons must show: "(1) a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Bohannan*, 527 F. App'x at 299 (citing *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam)). A plaintiff "must allege more than his personal belief that he is the victim of retaliation," and conclusory "allegations of retaliation will not be enough" to support such a claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). The plaintiff "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (internal quotation marks omitted). Failure to "point to a specific constitutional right that has been violated" defeats the retaliation claim. *Id.*

Even assuming Rogers could establish the first element—the exercise of a specific constitutional right—his retaliation claims fail because he has not demonstrated Defendants' intent to retaliate. To the contrary, Rogers has pleaded no facts suggesting Defendants' motive at all, much less any facts indicating Defendants intended to retaliate against him. *See* Questionnaire 11, 19, 22, 24. Rogers merely attaches the "retaliation" label to Defendants' purported conduct. *See*

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995*) (holding that a plaintiff "must produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred"); *Bloch v. Lake*, No. 3:03–CV–2965–G, 2004 WL 1084720, at *4 (N.D. Tex. May 10, 2004) (dismissing where plaintiff did not "present any facts in support of the intent element"), *R. & R. adopted by* 2004 WL 1208904 (N.D. Tex. June 1, 2004).

Although Rogers seemingly alleges that Defendant Castro intentionally provided him a medication with side-effects "to get back at [him]" (Questionnaire 11), he pleads no facts in support that would allow the Court to infer retaliation. *See Jones*, 188 F.3d at 325 (holding that conclusory allegations or a personal belief are not sufficient to establish a retaliation claim); *Porter v. Eisenberg*, No. Civ.A. 5:02–CV–263–C, 2003 WL 21209575, at *2 (N.D. Tex. May 21, 2003) (dismissing "conclusory" claim because plaintiff "alleged nothing more than his personal belief that" defendants retaliated and noting that he "failed to present direct evidence of retaliation or a chronology of events from which retaliation may be inferred").

And with respect to Rogers's claims against Defendants Orneles and Thomas, Rogers also failed to show that he suffered a retaliatory adverse act. As to the first charge, he merely alleges that Defendants "threatened" to act against him because they offered to provide him a bottom bunk in segregated housing. Questionnaire 19. Such an assertion does not satisfy the third element. *See Hoffman v. Stulga*, 464 F. App'x 229, 232 (5th Cir. 2011) (explaining that prisoner's "claim of retaliation fails because he [did] not show that the defendants engaged in any retaliatory act beyond threats"); *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) (holding that prisoner "ha[d] not stated a retaliation claim because he . . . alleged only a threat, but no retaliatory adverse act"). Concerning Defendant Orneles's purported failure to provide Rogers with her security officer number, this denial does not rise to the level of an adverse act because he does not allege

that he was in any way injured or harmed as a result. *Briones v. Ivory*, NO. 4:13-CV-689-A, 2013 WL 12099851, at *2 (N.D. Tex. Sept. 13, 2013) (dismissing retaliation claim where plaintiff did "not allege . . . that he suffered any injury, restriction, or other consequence"), *aff'd*, 568 F. App'x 327 (5th Cir. 2014).

### G.    Rogers fails to plead facts demonstrating Defendants conspired against him.

Rogers believes Defendants Jumper, Orneles, and Thomas are guilty of conspiracy. Questionnaire 31. He generally takes issue with each of their respective job performances and avers that "all three women inter into a fram of mind of not feeling any kind of empathy [sic all]" and "seem's [sic] to be all three are on the same pathway aiding and abetting within due to the negligence of [his] health [and] safety denial of [his] medical condition." *Id.* at 32. He likewise contends that Defendants Orneles and Thomas "wanted . . . to make [his] life uncomfortable." *Id.* Ultimately, he asserts that "each one of the defendant's cant say that they didnt conspire against [him] in some way [sic all] . . . ." *Id.* at 33.

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *accord Young v. Biggers*, 938 F.2d 565, 566 (5th Cir. 1991) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient."); *Chadman v. Quisenberry*, CIVIL ACTION NO.4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require that the claimant relate specific facts.").

"Therefore, to establish his conspiracy claim, [Rogers] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." *Montgomery*, 759 F. App'x at 314.

Rogers's allegations do not support a conspiracy claim under § 1983. He conclusorily claims that Defendants "conspired" together, but he provides no facts in support of that allegation. Questionnaire 31–33. As such, the conspiracy claims against Defendants Jumper, Orneles, and Thomas should be dismissed. *Doss v. City of DeSoto*, Case No. 3:19-cv-00408-S-BT, 2020 WL 1216716, at *3 (N.D. Tex. Feb. 18, 2020) (recommending dismissal of plaintiff's conspiracy claim because merely alleging that defendants "'conspired' to ruin his life" was not adequate to state a claim), *R. & R. adopted by* 2020 WL 1187174 (N.D. Tex. Mar. 11, 2020); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (citation omitted) (dismissing conspiracy claim because plaintiff did not "set forth specific allegations that [defendants] agreed to commit an illegal act"); *Simmons v. Jackson*, Case No. 3:15-cv-1700-S-BT, 2018 WL 4574975, at *4 (N.D. Tex. Sept. 6, 2018) (recommending dismissal of conclusory conspiracy claim), *R. & R. adopted by* 2018 WL 4568802 (N.D. Tex. Sept. 24, 2018); *Bagley v. Quada*, No. Civ.A. H-04-2371, 2005 WL 2757366, at *9 (S.D. Tex. Oct. 25, 2005) (concluding plaintiff's "bald allegations" that defendants conspired to violate his constitutional rights were insufficient to state a claim).

**H.    The district judge should dismiss Rogers's conclusory fraud claims.**

Roger's final claim is that Defendants Jumper and Christopher committed fraud. Questionnaire 7–8, 16–17. More specifically, he avers that Defendant Jumper did so by misleading patients because the brochure "state's [sic] your safety is our priority." *Id.* at 7. He further claims she failed "to protect [his] constitutional rights as a human being . . . ." *Id.* And as to Defendant Christopher, Rogers alleges that he is guilty of "misleading of general counsel of the Texas Tech

34

University system" and "all the dirty dealing behide [sic] the medical department" because he "played a big role at the office table." *Id.* at 16. Moreover, Rogers contends that Defendant Christopher "violated their contract of ability to perform falsify alter of document's [sic]" and "falsif[ied] . . . due process activity or profession of producing advertisements of services," thereby misleading Rogers. *Id.* at 16–17.

Rogers's fraud claims are conclusory and wholly without merit. He fails to plead facts to support his sweeping allegations and his claim should therefore be dismissed. *See Hill v. Tex. Dep't of Criminal Justice-Corr. Insts. Div.*, 670 F. App'x 275, 276 (5th Cir. 2016) (denying request for relief and concluding "[n]othing in [appellant's] pleadings provide[d] a basis for [his] scurrilous allegation" that "the district court and each of the state courts that have been involved in his post-deprivation actions have engaged in fraud"); *Hunter v. Pitre*, No. 3:17-CV-1093-S-BH, 2020 WL 3619533, at *8 (N.D. Tex. Apr. 16, 2020) (dismissing fraud claim where plaintiff pleaded insufficient facts in support), *R. & R. adopted by* 2020 WL 3618514 (N.D. Tex. July 2, 2020); *Carter v. Gibson*, Action No. 4:10–CV–825–Y, 2011 WL 1515049, at *3 (N.D. Tex. Apr. 20, 2011) ("Although pleading fraud on information and belief is allowable, this relaxation of the specificity standard should not be construed to allow fraud claims to be based on speculation and conclusory allegations."); *Trevino v. Bandera Cnty.*, Civil Action No. SA-08-CA-0184-XR, 2008 WL 4239842, at *7 (W.D. Tex. Sept. 15, 2008) ("Plaintiff's claims of some form of Medicaid fraud . . . are vague, contradictory and must be dismissed.").

I.   **Rogers's claims against Defendants in their official capacities should be dismissed.**

Rogers also sues each Defendant in their official capacities seeking both monetary damages and equitable relief. Compl. 1, 18–19. A suit against Defendants in their official capacities is simply another way of stating a claim against either the TCCC or TTUHSC, and therefore the State

of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *United States v. Tex. Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions."); *Hitt*, 2018 WL 773992, at *11 ("The TCCO is a state agency . . . [t]hus, the suit against [Defendant] in her official capacity is a suit against the TCCO, an agency of the State of Texas."). Even if Rogers stated underlying constitutional violations, his claim for monetary damages against Defendants in their official capacities would be barred. It is well settled that suits for monetary damages against state officials in their official capacities are precluded by state sovereign immunity and the Eleventh Amendment. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and recognizing that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). As such, any claim for monetary damages against Defendants in their official capacities should be dismissed. *Id.* at 894 (dismissing § 1983 official capacity claim against state official for money damages based on Eleventh Amendment immunity and because a state is not considered a "person" under § 1983).

Moreover, where Rogers has failed to establish an underlying constitutional violation, he cannot obtain equitable relief. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) ("As an injunction is a remedy that must be supported by an underlying cause of action, the failure of [appellant's] constitutional . . . claims also warrants dismissal of this claim."); *Pierce v. Kaufman Cnty. Dist. Attorney's Office*, No. 3:16-CV-2554-G-BH, 2018 WL 5624195, at *7 (N.D. Tex. Sept. 27, 2018) (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004)) ("Injunctive relief is 'potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not

entitled to any relief, injunctive or otherwise.'"), *R. & R. adopted by* 2018 WL 5620548 (N.D. Tex. Oct. 29, 2018).

### III.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Rogers's Complaint and all claims therein with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B).

### IV.    Right to Object

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April 19, 2021.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE